1      IN THE UNITED STATES DISTRICT COURT
       FOR THE WESTERN DISTRICT OF TEXAS
2                 WACO DIVISION

3   UNITED STATES OF AMERICA*   December 11, 2024
                              *
4   VS.                       *  CRIMINAL ACTION NO.
                              *
5   BAILEY WARREN LOWE        *    6:23-CR-154

6        BEFORE THE HONORABLE ALAN D ALBRIGHT
                 SENTENCING HEARING

7   APPEARANCES:

8

9   For the Government: Greg Gloff, Esq.
                        Assistant U.S. Attorney
                        PO Box 828
10                      Waco, Texas 76701

11  For the Defendant:  Stephen James Debye, Esq.
                        2315 S Loop 121
12                      Belton, Texas 76513

13  Court Reporter:     Kristie M. Davis, CRR, RMR
                        PO Box 20994
14                      Waco, Texas 76702-0994
                        (254) 340-6114

15

16     Proceedings recorded by mechanical stenography,

17  transcript produced by computer-aided transcription.

18

19

20

21

22

23

24

25

| | | |
|---|---|---|
| 10:18 | 1 | (Hearing begins.) |
| 10:18 | 2 | DEPUTY CLERK:  Court calls Case |
| 10:18 | 3 | 6:23-CR-154, United States of America vs. Bailey Warren |
| 10:18 | 4 | Lowe.  Case called for a sentencing hearing. |
| 10:18 | 5 | MR. GLOFF:  Greg Gloff for the United |
| 10:18 | 6 | States. |
| 10:18 | 7 | MR. DEBYE:  Stephen Debye for the |
| 10:18 | 8 | defense.  Good morning, Your Honor. |
| 10:18 | 9 | (Defendant was sworn.) |
| 10:18 | 10 | THE COURT:  Mr. Debye, good morning. |
| 10:19 | 11 | MR. DEBYE:  Good morning, Judge. |
| 10:19 | 12 | THE COURT:  Mr. Lowe, good morning.  Did |
| 10:19 | 13 | you hear what I -- were you in here when I talked |
| 10:19 | 14 | earlier about your right to appeal? |
| 10:19 | 15 | THE DEFENDANT:  Yes, Your Honor. |
| 10:19 | 16 | THE COURT:  Okay.  Did you understand |
| 10:19 | 17 | that? |
| 10:19 | 18 | THE DEFENDANT:  Yes, Your Honor. |
| 10:19 | 19 | THE COURT:  Okay.  Have you read and |
| 10:19 | 20 | either had -- have you either read or had read to you a |
| 10:19 | 21 | copy of the presentence investigation report? |
| 10:19 | 22 | THE DEFENDANT:  Yes, Your Honor. |
| 10:19 | 23 | THE COURT:  Objections? |
| 10:19 | 24 | MR. DEBYE:  There are objections, Your |
| 10:19 | 25 | Honor. |

10:19 1          THE COURT:  Okay.

10:19 2          MR. DEBYE:  They are set out in my

10:19 3  sentencing memorandum.  They were initially filed and

10:19 4  obviously the government responded or the probation

10:19 5  department responded and I just attached those

10:19 6  responses to my memorandum and incorporated them.

10:19 7          But I can -- I can tell you that some of

10:19 8  the objections aren't really that pertinent today.

10:19 9  There are two that I'm going to focus on.  The

10:19 10  objections I'm not going to focus on today is the

10:19 11  objection to the mandatory restitution, I think.

10:19 12  $5,000.  The argument that I made was that the

10:20 13  defendant is indigent and that would make it unable to

10:20 14  pay that.  The probation's response -- probation

10:20 15  department's response to that was at some point should

10:20 16  he be released he will be able bodied and able to get a

10:20 17  job and that the statute accounts for that ability to

10:20 18  make future income and that he would be able to pay the

10:20 19  restitution.  I'm not going to make any argument beyond

10:20 20  that.

10:20 21          THE COURT:  So obviously I rarely see

10:20 22  that end of it.  I don't usually give very substantial

10:20 23  fines and -- but I don't really know that I've ever had

10:20 24  to even follow up with restitution.  My -- I guess my

10:20 25  question would be I assume whoever's collecting the

10:20 1  fine takes into account the indigency or the wealth of

10:20 2  the person who I give the fine to, and I would not

10:20 3  ever -- if Mr. Lowe or anyone were unable to pay the

10:21 4  fine because financially he's unable to pay the fine, I

10:21 5  would not consider that a violation of supervised

10:21 6  release or anything that he would be punished for.  So

10:21 7  I think, number one, I think I have to impose the fine

10:21 8  regardless.  But I'm just letting Mr. Lowe know that I

10:21 9  would not see a failure to pay the fine if he were

10:21 10  financially unable to do so as a violation of my order

10:21 11  is the way I see the world.

10:21 12          MR. DEBYE:  Understood.

10:21 13          THE COURT:  If that helps you with your

10:21 14  concern.

10:21 15          MR. DEBYE:  Yes, sir.

10:21 16          The other objection I had was to the five

10:21 17  point enhancement for a pattern of sexual abuse.  I

10:21 18  initially -- when I made my objection and the probation

10:21 19  department responded, it made clear that I

10:21 20  misunderstood how they were applying that.  My

10:21 21  understanding was that they were using the -- that the

10:22 22  other -- when they seized my client's devices, they

10:22 23  found other similar situations to this case.  They were

10:22 24  uncharged and are not relevant conduct.  And I thought

10:22 25  that those instances were being used to establish the

10:22 1  pattern of sexual abuse.  However, I got the response

10:22 2  from the probation department, and what they're saying

10:22 3  is, no.  They are not counting that in that

10:22 4  calculation.  What they are doing is using the relevant

10:22 5  conduct for this offense or that things happened on

10:22 6  more than one occasion, the exchanging of images and

10:22 7  the exchanging of images happened more than once.  And

10:22 8  the comments do suggest that the offense itself and any

10:22 9  other -- at least one other prior incident could

10:22 10 establish that enhancement.

10:22 11          So I don't have any further -- so the

10:22 12 objection I made to that enhancement really didn't

10:23 13 properly apply because I'd misunderstood how they were

10:23 14 using it.  So we abandon that objection.

10:23 15          So that brings us to the two objections

10:23 16 that are at issue, I believe.  The first one being the

10:23 17 two point enhancement for distribution of child

10:23 18 pornography.  My objection to that was that Mr. Lowe

10:23 19 did not exchange images, did not distribute images as

10:23 20 we know that term to mean, meaning he didn't share it

10:23 21 with anyone.  He didn't use any peer-to-peer website.

10:23 22 There was no evidence that he intended to do that.

10:23 23 What the probation department used for that enhancement

10:23 24 is what basically the conduct for which he's being

10:23 25 charged with which was having the minor take illicit

| | | |
|---|---|---|
| 10:23 | 1 | pictures of herself and send them to him via Snapchat. |
| 10:24 | 2 | THE COURT: Which your argument is that |
| 10:24 | 3 | is that is under 18 United States Code Section 2422(b) |
| 10:24 | 4 | what he is being punished for and they're doubling down |
| 10:24 | 5 | by -- those are my words, but essentially it's double |
| 10:24 | 6 | counting to charge him with that offense and then say |
| 10:24 | 7 | we get to enhance under the guidelines. |
| 10:24 | 8 | I've gone through this before. |
| 10:24 | 9 | MR. DEBYE: Sure. And no. Well, my |
| 10:24 | 10 | understanding of double counting is if the conduct used |
| 10:24 | 11 | to justify the enhancement is a necessary component |
| 10:24 | 12 | like something that the -- is basically a prong of the |
| 10:24 | 13 | crime. That's not the case here. I mean, Mr. -- there |
| 10:24 | 14 | are other ways that Mr. Lowe could have violated the |
| 10:24 | 15 | statute didn't necessarily require him to do it this |
| 10:24 | 16 | particular way, though I would like the Court to take |
| 10:25 | 17 | that line of thinking and consideration. What the |
| 10:25 | 18 | defense is saying on this objection is, well, for |
| 10:25 | 19 | example, probation came back with a case from the Fifth |
| 10:25 | 20 | Circuit, the McGavitt case which is also attached to my |
| 10:25 | 21 | memorandum, where they state that that -- that the |
| 10:25 | 22 | Court held that the defendant coercing or asking for or |
| 10:25 | 23 | having the child victim create an image and send that |
| 10:25 | 24 | image to him constitutes distribution. As it says in |
| 10:25 | 25 | my memorandum, that isn't what the Court found. The |

10:25  1   Court -- in that case the defendant had not properly

10:25  2   preserved that objection, had not made that objection

10:25  3   at trial.  The trial court agreed that that conduct was

10:25  4   distribution.  What the McGavitt court said, what the

10:25  5   Fifth Circuit said was it recognized that the Fifth

10:25  6   Circuit has not actually addressed that subject yet.

10:26  7   So it acknowledged that it's an issue that it has not

10:26  8   ruled that way.  It was not ruling that way in that

10:26  9   particular case though in dicta it does suggest that

10:26  10  maybe perhaps they -- you know, they give credence to

10:26  11  the district court's logic and somewhat agree with it,

10:26  12  but they do not find that that conduct --

10:26  13          THE COURT:  Satisfies the distribution.

10:26  14          MR. DEBYE:  -- satisfies distribution,

10:26  15  Judge.

10:26  16          And so -- and of course we're making the

10:26  17  objection now and I'd like for you to remember these

10:26  18  objections when we're talking about 3553 considerations

10:26  19  just to take into account.

10:26  20          THE COURT:  Let me hear a response from

10:26  21  the government on that.

10:26  22          MR. GLOFF:  Couple of things just

10:26  23  basically on distribution.  Distribution can be charged

10:26  24  as a separate offense.  And, in fact, there have been

10:26  25  cases that have come through this Court and cases that

10:26 1    are working their way through this Court where exactly

10:27 2    these facts happened and it was charged as a

10:27 3    distribution or aiding and abetting the distribution.

10:27 4    When you ask a minor to produce sexually explicit

10:27 5    images and send them to you, you're aiding and abetting

10:27 6    the distribution of child pornography.  So that's not

10:27 7    really the question.  The question is -- the Court

10:27 8    raised, is it double counting?  In this particular

10:27 9    statute, this is what's known as the enticement statute

10:27 10   and it's basically, did they use a facility of

10:27 11   interstate or foreign commerce like a cell phone or

10:27 12   computer to entice or induce a minor to engage in some

10:27 13   sexual activity which any person can be prosecuted?

10:27 14   That doesn't always happen with distribution.

10:27 15   Sometimes it's just a phone call or working over a

10:27 16   computer and there's no images exchanged at all.  In

10:27 17   fact, some of those cases have come in here where it's

10:27 18   just like, hey.  I want to meet you and get to know you

10:27 19   and then they end up having sex with the minor.

10:27 20          THE COURT:  So here if I -- I'm just

10:27 21   making sure I understand.  It's not that Mr. Lowe could

10:28 22   be charged with the exact same -- with what he's been

10:28 23   charged with without the distribution having taken

10:28 24   place.

10:28 25          MR. GLOFF:  Yes, sir.

10:28  1          THE COURT:  And so in this case the fact

10:28  2   that he enticed and obtained the distribution of the --

10:28  3   of the -- of images gets -- is the basis for the two

10:28  4   point enhancement.  And again, I'm -- I'd like to say

10:28  5   as much of this as I can so the record when they're

10:28  6   grading my papers, they know what I was thinking is

10:28  7   because with my -- my understanding is of course also

10:28  8   with regard to the guideline range, the effort is to

10:28  9   make sure I sentence Mr. Lowe within a range that the

10:28 10   numbers lead us to.  And so the two point enhancement

10:29 11   is to reflect above and beyond what someone would

10:29 12   ordinarily get.  The bailiwick for sentencing should go

10:29 13   up two points because in addition to the other conduct

10:29 14   for this offense, there was distribution and that's

10:29 15   what bumps up the guideline range that I should

10:29 16   consider.

10:29 17          MR. GLOFF:  And --

10:29 18          THE COURT:  Is that fair?

10:29 19          MR. GLOFF:  That's exactly correct.

10:29 20   There have been other cases with this statute where the

10:29 21   defendant enticed the minor over the telephone, cell

10:29 22   phone or application or whatever.  No images were

10:29 23   exchanged.  Maybe they met and had sex.  Maybe it was

10:29 24   an undercover operation.  But this defendant went an

10:29 25   additional step and said not only am I enticing you,

| | | |
|---|---|---|
| 10:29 | 1 | but I also want you to send me images. |

10:29  1  but I also want you to send me images.

10:29  2          THE COURT:  And this is -- to some

10:29  3  extent -- and Mr. Debye, I'm going to give you a chance

10:29  4  to respond to this.

10:29  5          So there's some part of this also that

10:30  6  is -- not use "great" -- is a cleaner way of as opposed

10:30  7  to me thinking that the guideline says it should be X

10:30  8  to Y and then I think, oh, but there was distribution

10:30  9  here and I would turn maybe to 3553 and do a variance

10:30  10  up to reflect the additional conduct.  This is actually

10:30  11  putting as much as we can mechanically put down this --

10:30  12  by -- if I were to accept the two points or not, then I

10:30  13  would be making clear for the record that I was

10:30  14  sentencing within the guideline range where I took that

10:30  15  additional conduct into consideration and it's half a

10:30  16  dozen one -- it's the same -- it's really the same

10:30  17  thing.

10:30  18          MR. GLOFF:  Exactly.  So what the

10:30  19  guidelines -- we have to also remember that overall the

10:31  20  overarching theme of the guidelines is they're advisory

10:31  21  to the Court.  The Court does not have to follow the

10:31  22  guideline range.  And as the Court's well aware --

10:31  23          THE COURT:  I would quit if I had to.

10:31  24          MR. GLOFF:  What's that?

10:31  25          THE COURT:  I would quit if I had to.  I

| | |
|---|---|
| 10:31 | 1 |

mean, I -- seriously.  In either direction.  If I

couldn't go down or I couldn't go up, I wouldn't do

this.

MR. GLOFF:  Of course it takes away the

Court's discretion if it were mandatory like it used to

be.

THE COURT:  I agree.

MR. GLOFF:  But it establishes some

metrics.  Without trying to muddy the water, you could

say, no.  I'm not going to award the two points.  I'm

going to grant the objection and still take the conduct

into account in assessing sentence.

THE COURT:  Right.

MR. GLOFF:  So that's -- that's totally

within the Court's right and discretion to do that.

The only -- the last thing I would say

about the distribution is probation's right and also

Mr. Debye's right in that the case -- the McGavitt case

was decided at the end of the day because they didn't

preserve the right.  So it was a different standard.

It was -- because they didn't object to those two

points like the defense is doing today.  But the

Court -- and this is United States versus McGavitt.

It's in the -- it's cited in the probation's response

to the objections and also in Mr. Debye's memo.  But

10:32 1 just for the record 28 F.4th 571 Fifth Circuit 2022 on

10:32 2 or about 576. The Court does say this language which I

10:32 3 think is instructive: As a whole, Section 2G2.1's text

10:32 4 and relative commentary support the district court's

10:32 5 application of the enhancement.

10:32 6 So those facts were pretty much on all

10:32 7 fours with our facts. Defendant was talking with the

10:32 8 minor, got that minor to perform certain acts, certain

10:33 9 sexual acts, memorialized that, had videos, what have

10:33 10 you, and sent to him. And the district court in that

10:33 11 case awarded the two points for distribution.

10:33 12 So those are kind of the facts, but the

10:33 13 case was decided as Mr. -- since they didn't preserve

10:33 14 their right or their objection, it was a little easier

10:33 15 standard for the Fifth Circuit. But I think the

10:33 16 distribution is appropriate in this case. And

10:33 17 that's -- without beating a dead horse more, I'm going

10:33 18 to sit down.

10:33 19 THE COURT: Yes, sir.

10:33 20 MR. DEBYE: I will just say that I don't

10:33 21 think Mr. Gloff's analogy of the aiding and abetting

10:33 22 the production of child pornography is apples to apples

10:33 23 necessarily. There's a whole different set of

10:33 24 guideline enhancements that would or would not apply.

10:33 25 Ironically -- or maybe not ironically -- this

10:33  1    particular distribution enhancement would not apply.

10:33  2    That would be double counting in that kind of case.

10:33  3    The guidelines address -- and I don't know them

10:34  4    backwards and forwards, but in those child pornography

10:34  5    cases is did you disseminate them for pecuniary

10:34  6    without -- you know, there's four or five.

10:34  7              THE COURT:  Look.  I get -- I feel like

10:34  8    I'm in a patent case doing a Markman hearing a little

10:34  9    bit, but I get that there's one argument you can make

10:34  10   where you legitimately say -- look at me and say he

10:34  11   didn't distribute it.  I mean, he didn't distribute it.

10:34  12   And depending on how we look at the word "distribute,"

10:34  13   Mr. Gloff's also right that, well, he got the images.

10:34  14   So they were distributed.

10:34  15             MR. DEBYE:  Right.  Yes, Your Honor.  And

10:34  16   I'll keep the rest of it very brief.

10:34  17             He pointed out what the McGavitt court

10:34  18   said regarding those facts.  I will also say the Court

10:34  19   also said it can see the -- it can see the conflict, if

10:34  20   you will, between the two comments that are at play.

10:35  21   And so I just want to point that out.

10:35  22             And finally I want to point out that, you

10:35  23   know, and Mr. Gloff mentioned that the guideline ranges

10:35  24   are advisory and, yes, of course we agree with that.

10:35  25   But they're also meant to avoid disparate sentences and

| | | |
|---|---|---|
| 10:35 | 1 | so we're looking for conduct that sort of |
| 10:35 | 2 | differentiates this case from other cases, and again |
| 10:35 | 3 | that goes back more to the -- almost the double |
| 10:35 | 4 | counting argument is this -- it's hard to imagine this |
| 10:35 | 5 | kind of case happening in many other different ways |
| 10:35 | 6 | other than using -- and that actually bleeds into the |
| 10:35 | 7 | objection for the computer which I would like to get -- |
| 10:35 | 8 | THE COURT:  Go ahead. |
| 10:35 | 9 | MR. DEBYE:  Okay.  And, Judge, on that |
| 10:35 | 10 | one I will -- I will argue that I do not have any |
| 10:35 | 11 | binding authority or any good authority that tells you |
| 10:35 | 12 | that the computer enhancement should not apply to this |
| 10:35 | 13 | case.  All I can say is it's more of a spirit of the |
| 10:35 | 14 | law argument in the sense that this -- I feel that this |
| 10:35 | 15 | enhancement is such an anachronism we probably won't be |
| 10:36 | 16 | seeing it in five, six, seven, eight, nine, ten years, |
| 10:36 | 17 | I would hope. |
| 10:36 | 18 | THE COURT:  In five years we'll have AI |
| 10:36 | 19 | which I think the Supreme Court has said you can't |
| 10:36 | 20 | punish people for.  So maybe all this will go away. |
| 10:36 | 21 | MR. DEBYE:  We'll see, Judge. |
| 10:36 | 22 | And I just -- and if you'll oblige me, 18 |
| 10:36 | 23 | USC 2422(b) which is what Mr. Lowe was indicted for and |
| 10:36 | 24 | which he pled guilty says whoever, using the mail or |
| 10:36 | 25 | any facility or means of interstate or foreign commerce |

| | |
|---|---|
| 10:36 | 1 |

or within the territorial jurisdiction of the United
States knowingly persuades, induces, entices or coerces
any individual who has not obtained the age of 18 years
to engage in prostitution or any sexual activity for
which a person can be charged with a criminal offense.

The reason I read that is to say we --
the last defendant seems his conduct occurred on Fort
Hood.  So that was the jurisdictional hook.  Here he
would have to use the mail to do this crime which -- I
guess what I'm getting at is I'm sure it's probably odd
and you probably can't recall a case where somebody
committed this particular crime using the mail.  So he
would have to use some other facility of interstate
commerce which I had a hard time racking my brain to
think how else would he do it other than using his cell
phone, a computer, an interactive device, you know, the
social media.  And so that just goes to my argument
that it's -- it's anachronistic.  It's difficult to
imagine many other ways he could have committed this
particular crime without using a computer in today's
day and age.  I don't think it -- I don't think it
tells us conduct -- it doesn't -- it doesn't
differentiate conduct between him and other similarly
situated defendants is my argument there, Judge.

THE COURT:  I'm going to overrule that

| | | |
|---|---|---|
| 10:37 | 1 | objection.  I've dealt with it before and, frankly, I |
| 10:38 | 2 | think as a policy matter, which I'm not involved in, I |
| 10:38 | 3 | think that is one of the issues I think the Sentencing |
| 10:38 | 4 | Guideline Commission ought to take up and tell us |
| 10:38 | 5 | whether or not they really mean for it to affect the |
| 10:38 | 6 | way it does in the same way that I think we've -- I've |
| 10:38 | 7 | talked to Mr. Gloff and others about the fact that, you |
| 10:38 | 8 | know, there was a time when during Breaking Bad when, |
| 10:38 | 9 | you know, meth was at 85 percent and you got an |
| 10:38 | 10 | enhancement of points for it being above a certain |
| 10:38 | 11 | purity and now 100 percent of the cases I have are of |
| 10:38 | 12 | that purity and so they're all getting the two points. |
| 10:38 | 13 | I don't know that the Commission means for them to get |
| 10:38 | 14 | two points when -- under the percent of it, but that's |
| 10:38 | 15 | where the guidelines are still at. |
| 10:38 | 16 | And also we sit in the Fifth Circuit and |
| 10:38 | 17 | I have a pretty good idea of how the Fifth Circuit |
| 10:38 | 18 | would view this and so I'm going to overrule -- I'm |
| 10:39 | 19 | overruling all of your objections.  But obviously I |
| 10:39 | 20 | think they were well taken. |
| 10:39 | 21 | So is there anything else you wanted to |
| 10:39 | 22 | take up before I move on to advising him of his |
| 10:39 | 23 | guideline range? |
| 10:39 | 24 | MR. DEBYE:  No. |
| 10:39 | 25 | THE COURT:  Okay.  Anything from the |

10:39 1  government before I move on?

10:39 2                  MR. GLOFF:  Not at this point.

10:39 3                  THE COURT:  Oh, also I need to read -- I

10:39 4  got the look from Jen which is what reminded me that I

10:39 5  had to read this.

10:39 6                  The Court adopts the recommendations of

7  the United States Probation Office and adopts by

8  reference and imposes the mandatory and standard

9  conditions of probation and supervised release in the

10:39 10 district-wide standing order of November of 2016.

10:39 11                 Mr. Lowe, you are a total offense level

10:39 12 of 33, a criminal history category of one.  Your

10:39 13 guideline range -- let me start with your statutory

10:39 14 range which is ten years to life.  Your guideline range

10:39 15 is 360 months to life.  Term of supervised release of

10:40 16 five years to life.  You are ineligible for probation.

10:40 17 A fine of up to $250,000.  No restitution.  A one time

10:40 18 special assessment of $100.  And a mandatory assessment

10:40 19 or fine of $5,000 which we've discussed already.

10:40 20                 Mr. Lowe, this is your opportunity to

10:40 21 speak to the Court.  I encourage you to do so if you

10:40 22 want to.  Obviously it's not required, but I encourage

10:40 23 you to do it.  It helps me a great deal to hear from

10:40 24 people who I'm about to sentence.  Then I'll hear from

10:40 25 your counsel, and finally I'll hear from the

10:40  1   government.

10:40  2                    Mr. Lowe?

10:40  3                    THE DEFENDANT:  I don't know when or

10:40  4   where it all started to go wrong, but I became someone

10:41  5   even now looking back that I don't recognize.

10:41  6                    I failed myself and my family and the

10:41  7   people in this country that I swore to defend.  And I

10:41  8   did things I do regret.  And this is not -- it is my

10:41  9   hope.  But the ones I've hurt will live happy lives and

10:41 10   that God will heal their hearts.

10:41 11                    God put my life in your hands and I

10:41 12   understand that I must own up to my past, but I hope

10:41 13   that whatever happens from here that it is God's will.

10:41 14   That's all.

10:42 15                    THE COURT:  Mr. Debye, is his mother

10:42 16   here?

10:42 17                    MR. DEBYE:  Yes.  That's the first thing

10:42 18   I wanted to point out, Judge.  His mother, his

10:42 19   stepfather, his brother, his grandmother and his aunt

10:42 20   are all here in the courtroom this morning.  And his

10:42 21   father.  I'm sorry.  And his biological father.

10:42 22                    THE COURT:  If you would have his mother

10:42 23   and grandmother come up.

10:42 24                    MR. DEBYE:  Sure.

10:43 25                    THE COURT:  If you'd like to give him a

| | | |
|---|---|---|
| 10:43 | 1 | hug. |
| 10:43 | 2 | Grandma gets one too. |
| 10:44 | 3 | You don't need to say anything unless you |
| 10:44 | 4 | just want to. |
| 10:44 | 5 | UNIDENTIFIED SPEAKER: I just want to |
| 10:44 | 6 | address the Court and let them know I am sorry for |
| 10:44 | 7 | anyone that got hurt or if anyone was hurt, but please |
| 10:44 | 8 | have compassion because I haven't had my son home in |
| 10:44 | 9 | five years. He's been overseas in Japan. And now he's |
| 10:44 | 10 | going to be taken away from me again. So please take |
| 10:44 | 11 | that in consideration. Thank you. |
| 10:44 | 12 | THE COURT: Mr. Debye? |
| 10:44 | 13 | MR. DEBYE: Thank you, Your Honor. |
| 10:45 | 14 | As the Court is aware, we employed an |
| 10:45 | 15 | expert in this case Dr. Ferrara, and his evaluation is |
| 10:45 | 16 | attached to the sentencing memorandum. And because of |
| 10:45 | 17 | the nature of some of the -- of the topics in that, I'm |
| 10:45 | 18 | not going to repeat them except to say that they're in |
| 10:45 | 19 | the report. And some of the things I want to highlight |
| 10:45 | 20 | in there are first and foremost what the result of the |
| 10:45 | 21 | evaluation was which is that Mr. Lowe is a low risk to |
| 10:45 | 22 | reoffend, and that's based off mainly his age. And he |
| 10:45 | 23 | actually received points against his -- you know, made |
| 10:45 | 24 | his risk level a little bit higher because of his young |
| 10:45 | 25 | age because it's projecting out in the next five years. |

| 10:45 | 1 | He's going to get a sentence longer than that, I |
|---|---|---|
| 10:45 | 2 | would -- he's going to get a sentence of at least ten |
| 10:45 | 3 | years.  But the point I'm making is when he is released |
| 10:46 | 4 | from whatever sentence you give him, he will be even a |
| 10:46 | 5 | lesser risk because science has told us that with these |
| 10:46 | 6 | crimes, two factors tell us if somebody is a risk to |
| 10:46 | 7 | reoffend.  That is their age and the older they get, |
| 10:46 | 8 | the less risk they are, and a stable marriage life. |
| 10:46 | 9 | And so our hope today is that he gets a sentence that |
| 10:46 | 10 | will allow him to be released from jail still young |
| 10:46 | 11 | enough to start that family and to have a stable |
| 10:46 | 12 | married life. |
| 10:46 | 13 | I want to point the Court also to the |
| 10:46 | 14 | adverse child experience test and just quote from the |
| 10:46 | 15 | report where Dr. Ferrara said he had an overwhelming |
| 10:46 | 16 | number of adverse childhood experiences.  There's -- |
| 10:46 | 17 | and then he connects that -- he connects that to that |
| 10:46 | 18 | trauma, that childhood trauma to the sexual dysfunction |
| 10:46 | 19 | that manifested itself in this offense.  The good news |
| 10:47 | 20 | is Dr. Ferrara identifies that with therapy and |
| 10:47 | 21 | treatment, he can be treated.  And I think -- I think |
| 10:47 | 22 | they identify mainly the early exposure to pornography |
| 10:47 | 23 | which I think the term he uses was an incubation period |
| 10:47 | 24 | for his mind with these sort of -- to have this sort of |
| 10:47 | 25 | perverse and distorted view of sexuality started there. |

| | | |
|---|---|---|
| 10:47 | 1 | Obviously he has family support. We're |
| 10:47 | 2 | asking the Court for a sentence of 240 months. I came |
| 10:47 | 3 | up with that because, one, I think it's -- it's -- |
| 10:47 | 4 | that's a significant sentence. That satisfies the need |
| 10:47 | 5 | for a sentence for the -- to reflect the seriousness of |
| 10:47 | 6 | this offense. It's also double the mandatory minimum. |
| 10:48 | 7 | And while it is below, it's somewhere -- it's kind of |
| 10:48 | 8 | halfway between what the low end of the guideline and |
| 10:48 | 9 | the minimum calls for. |
| 10:48 | 10 | I also looked up the statistic that |
| 10:48 | 11 | across the United States in these federal courts for |
| 10:48 | 12 | sexual abuse cases about 46 percent result in a |
| 10:48 | 13 | downward departure, and those are -- those do not |
| 10:48 | 14 | include ones where the government files a motion. And |
| 10:48 | 15 | that goes to avoiding a disparate sentence. A |
| 10:48 | 16 | 240-month sentence would not be a disparate sentence |
| 10:48 | 17 | that the guidelines and Congress don't want. It would |
| 10:48 | 18 | fall -- because the average reduction in those cases |
| 10:48 | 19 | was 34 percent. Now, I found that out after I came up |
| 10:48 | 20 | with the 240 months, but it just so happens that |
| 10:48 | 21 | 34 percent reduction would result in a 240-month |
| 10:48 | 22 | sentence for Mr. Lowe. |
| 10:48 | 23 | With a -- with a 20-year sentence, |
| 10:49 | 24 | Mr. Lowe would -- assuming he could get good time could |
| 10:49 | 25 | get out in his 40s and live with -- assuming he gets |

| | | |
|---|---|---|
| 10:49 | 1 | the treatment he needs and commits himself to living a |
| 10:49 | 2 | life worth living, could get married, have children and |
| 10:49 | 3 | lead a very productive life and enjoy his family. And |
| 10:49 | 4 | that's what he's asking for today, Judge. He's asking |
| 10:49 | 5 | for mercy. |
| 10:49 | 6 | THE COURT: Mr. Gloff? |
| 10:49 | 7 | MR. GLOFF: I'll try to keep my comments |
| 10:49 | 8 | brief. |
| 10:49 | 9 | I recognize the pain that there is in the |
| 10:49 | 10 | courtroom with the defendant's family. I understand |
| 10:50 | 11 | the loss and the separation and the pain and so my |
| 10:50 | 12 | heart goes out to them. My comments in no way are |
| 10:50 | 13 | meant to detract from what they're going through. |
| 10:50 | 14 | But we have to look at both sides of the |
| 10:50 | 15 | coin. And in this case when the FBI obtained the |
| 10:50 | 16 | defendant's cell phone and his applications and the |
| 10:50 | 17 | things that were on there, there were many, many, many, |
| 10:50 | 18 | many pieces of evidence. There are 11 victims in the |
| 10:50 | 19 | PSR, including the one that's charged. Those are the |
| 10:50 | 20 | ones that the FBI could positively identify. And those |
| 10:50 | 21 | are scattered throughout three states. |
| 10:51 | 22 | Whether or not the defendant has a low |
| 10:51 | 23 | risk to offend based on some pattern score, I have no |
| 10:51 | 24 | idea. I can't see into the future. But what I can see |
| 10:51 | 25 | is a pattern of behavior that this defendant has been |

| | |
|---|---|
| 10:51 | 1 |
| 10:51 | 2 |
| 10:51 | 3 |
| 10:51 | 4 |
| 10:51 | 5 |
| 10:51 | 6 |
| 10:51 | 7 |
| 10:51 | 8 |
| 10:51 | 9 |
| 10:52 | 10 |

engaged in that we know of since at least 2019.

And the various victims are listed at Paragraphs 41 through 52. And I just want to point out the ages of those victims. And these are victims that in some cases he obtained sexually explicit images from them because he either coerced them or romanticized with them or whatever, and some of these he actually consummated by sexual abuse with some of those victims.

Victim KF, 14 years old; victim LR, 13 years old; victim CC, 14; VI -- excuse me -- VL, 12 years old; SB, 15; LM, 16; AC, 16; C Core, 13; RL, 16; MV, 15. And the victim in the count of indictment 13.

I would ask the Court to take notice of the victim impact statements that are included in your packet. I think there's three or four that were submitted by several victims.

And once again, no one can see into the future. But what I can say is that a mistake is when you -- I'm not trying to be clever, but a mistake is, I heard one time when you wake up in the morning it's kind of dark and you put on dark socks and one of them's black and one of them's blue and you get to work in the light and you see that. That's a mistake.

Despite what the defendant had happen

10:53  1    when he was growing up and his childhood and all of his

10:53  2    experiences, he was a member of the United States

10:53  3    military.  And quite frankly, you can't say, well,

10:53  4    Judge, you need to take that into consideration and

10:53  5    give him a break if you don't also at the same time

10:53  6    hold him to a higher standard.  Much if not all this

10:53  7    activity was occurring while he was in the military

10:53  8    sometimes when he was deployed or on active duty.

10:53  9    Sometimes he would take leave and do these activities.

10:53  10            But you have to look at both sides of the

10:53  11   coin.  And these were not mistakes.  This was choice

10:53  12   after choice after choice after choice.  And as much

10:53  13   pain as the family here's going through with being

10:54  14   separated from the defendant, those names that I --

10:54  15   those initials that I read of those victims, they're

10:54  16   going to have to deal with this -- the pain that they

10:54  17   suffered and the consequences of those things that

10:54  18   happened to them and that's going to -- that's going to

10:54  19   carry out throughout their life as well.  But not

10:54  20   everybody that has a bad upbringing or has rough spots

10:54  21   makes these kind of decisions where you just say

10:54  22   whatever I want to do, I'm going to do and whoever I

10:54  23   want to do it to, I'm going to do it to.

10:54  24            I don't know what the appropriate

10:54  25   sentence is in this case, but I do know this.  I

10:54  1   respectfully ask you when you take into consideration

10:54  2   what you believe is the appropriate sentence that you

10:54  3   look at his entire behavior and the choices that he

10:54  4   made.

10:54  5              That's all I have.

10:55  6              THE COURT:  So as I said earlier in the

10:55  7   courtroom, ordinarily if I'm going to depart above the

10:55  8   guidelines, I reset for a hearing.  I'm not going to do

10:55  9   that this time.  If you want to make part of your

10:55  10  appeal that I didn't have a second sentencing, you can

10:55  11  do that.

10:55  12             Going through -- plus it would entail

10:55  13  bringing your -- all the family back and all that.

10:55  14             So but the bottom line is I'm -- having

10:55  15  studied the PSR, it's hard to imagine how the people

10:55  16  who created the guidelines could adequately capture

10:56  17  what the appropriate sentence is for what Mr. Lowe did,

10:56  18  and by that I mean they are far too low in my opinion

10:56  19  for his conduct.  He's here.  He's appeared contrite

10:56  20  here, but I'm just going to say this in front of his

10:56  21  family.

10:56  22             Mr. Lowe, you are a monster.  Your

10:56  23  conduct is beyond words.

10:56  24             I -- the only -- under United States Code

10:57  25  18 Section 3553, to reflect the seriousness of the

| | | |
|---|---|---|
| 10:57 | 1 | offense, to promote respect for the law, to provide |
| 10:57 | 2 | just punishment for the offense, to afford adequate |
| 10:57 | 3 | deterrence to criminal conduct, to protect the public |
| 10:57 | 4 | from further crimes of the defendant, I'm going to |
| 10:57 | 5 | impose a sentence of life; a term of supervised release |
| 10:57 | 6 | of life; no probation; a fine of $100; no restitution; |
| 10:57 | 7 | a one time special assessment of $100; and a fine of |
| 10:57 | 8 | $5,000. |
| 10:57 | 9 | I cannot -- I cannot put into words how |
| 10:57 | 10 | reprehensible I find your conduct to be.  I'm |
| 10:58 | 11 | frankly -- I'm shocked by it.  The fact that you were |
| 10:58 | 12 | in the military when you -- when you perpetrated these |
| 10:58 | 13 | horrific acts on this number of underage girls. |
| 10:58 | 14 | That's all I have to say. |
| 10:58 | 15 | Mr. Debye, I think you did an outstanding |
| 10:58 | 16 | job for your client.  It's a great part of our system |
| 10:58 | 17 | that no matter what you're charged with you have |
| 10:58 | 18 | counsel that, you know, is of your quality and gave |
| 10:58 | 19 | that level of representation. |
| 10:58 | 20 | Mr. Gloff, I see some scurrying.  Is -- |
| 10:58 | 21 | MR. GLOFF:  Well, I just -- I want -- I |
| 10:58 | 22 | understand the Court's sentence.  I just want to make |
| 10:58 | 23 | sure that the Court apprises the defendant of his |
| 10:58 | 24 | special conditions. |
| 10:59 | 25 | THE COURT:  Oh, I'm sorry. |

10:59   1               Special conditions Paragraphs 78

10:59   2   through 100.

10:59   3               Is there anything else, counsel?

10:59   4               MR. DEBYE:  No, Your Honor.

10:59   5               MR. GLOFF:  Not from the government.

10:59   6               (Hearing adjourned.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   UNITED STATES DISTRICT COURT )

2   WESTERN DISTRICT OF TEXAS     )

3

4

5               I, Kristie M. Davis, Official Court

6   Reporter for the United States District Court, Western

7   District of Texas, do certify that the foregoing is a

8   correct transcript from the record of proceedings in

9   the above-entitled matter.

10              I certify that the transcript fees and

11  format comply with those prescribed by the Court and

12  Judicial Conference of the United States.

13              Certified to by me this 19th day of

14  January 2025.

15
                        */s/ Kristie M. Davis*
16                      KRISTIE M. DAVIS
                        Official Court Reporter
17                      PO Box 20994
                        Waco, Texas 76702
18                      (254) 666-0904
                        kmdaviscsr@yahoo.com
19

20

21

22

23

24

25